FILED
October 10, 2024
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: _____CC_____
             DEPUTY

IN THE U.S. DISTRICT COURT IN AND FOR THE
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **MARGARET J. LOWERY,** | CASE NO: **1:24-cv-1228-RP** |
| **Plaintiff,** | |
| v. | **Count I**<br>Computer Fraud - 18 U.S. Code §1030<br>Federal Communications Act 47 U.S.C. §151 et seq. |
| **X (TWITTER) Corporation,** | Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202 |
| **Defendant.** | **NO JURY REQUESTED** |

### PETITION FOR DECLARATORY JUDGMENT

COMES NOW the Plaintiff, Margaret J. Lowery, pro se and informs the Court as follows:

### JURISDICTION

1. Plaintiff is a resident of Sioux Falls, South Dakota since 2019. She has an business office in Tulsa and Muskogee, Oklahoma. Plaintiff's health insurance will not start until January 1st 2025 so she must maintain residency in South Dakota until that time so she has health insurance. The open enrollment period occurs each year from October - December for January 1, 2025. Plaintiff is 63, not Medicare age. She has extensive pre existing conditions which make health insurance next to impossible to obtain.

2. Defendant X Corp., on information and believe, is a domiciled Nevada corporation with its main headquarters in Travis County, Texas, the jurisdiction of this Court.

3. Defendant X Corp runs a social medial platform called X (formerly Twitter) which does business in all 50 States and around the world.

4. Complete Diversity exits. A federal question exists. The parties are not adverse and plaintiff appreciates all the assistance X Corp and Mr. Musk have given her. It went from zero assistance under Twitter to actual response under X Corp. In no way is the Petition intended to create any offense to X Corp or Mr. Elon Musk. What is described herein is not their issue or fault. It is the acts of third parties against both Plaintiff & X Corp.

5. This Court has jurisdiction over the parties federal claims pursuant to 28 U.S.C. §§ 1331 and 1343(a). The Court has jurisdiction over any state claim pursuant to 28 U.S.C. § 1367.

6. This Court has authority to grant declaratory and injunctive relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, and under the Court's inherent equitable jurisdiction.

## VENUE

7. Venue is proper under 28 U.S.C. § 1391(b)(1), (2) because the Defendant is located, resides, and has offices in this judicial district and the violations of Plaintiff's rights are occurring and will occur within this judicial district.

8. The allegations with X Corporation occurred in Texas, South Dakota or Oklahoma. Plaintiff is not opposed to venue in Texas and consents to this Court's jurisdiction.

9. Plaintiff seeks to adjudicate pursuant to her subscription agreement that certain social media accounts and posts which unknown third parties have opened and affixed Plaintiff's name to, are in fact not Plaintiff's accounts nor posts.

## FACTS

10. Plaintiff is an Oklahoma attorney. She does not seek to practice law in Texas and she does not seek admission pro hac vice as she will not represent anyone in federal court in Texas.

11. Plaintiff has ties to Texas, she is a graduate of SMU, Dallas and has an inactive Texas Teacher's license.

12. During 2022 to the present the Plaintiff has had X account(s). She opened those accounts and agreed to the terms of service with X Corp.

13. Plaintiff attended SMU, University College Oxford, University of Tulsa Law School, University of North Carolina Chapel Hill for her Masters. She served as General Counsel to Memorial Hospitals, part of the BJC Healthcare System. On top of her duties as an attorney, Ms. Lowery was Rotary President, a Paul Harris Fellow, she was Midwest Corporate Counsel of the Year, was recognized for her civil rights work, she served as a Commissioner to the Board of Bar Admission and to the states ethics committee. She is published in her filed. It is the legal career every attorney dreams of and then "it" happened.

14. In October/November of 2022, her professional X account was attacked and hacked. Plaintiff thought the account hack had been resolved. This occurred during the time period X was purchased by Mr. Elon Musk/X Corp.

15. During the hack something was done to the account to permit continued access. No amount of password changes or security reviews could fix the problem. X Corp with the consent of Plaintiff deleted the account because of the problems it was creating on the X platform.

16. Then unknown individuals then began opening accounts in Plaintiff's name and posting false information on social media in which they attacked courts, law firms, judges, etc. As fast as Plaintiff and X could identify the accounts, others went up. Plaintiff had to go to an anonymous account only registered with her state bar.

17. She cannot even have a public Linked In Account the attacks have become so personal.

18. At the same time as the attacks, Plaintiff owns and operates a social media account for an entity that does charitable work in the USA and worldwide. The repeated attacks on Plaintiff threaten to damage their brand.

19. The point of these attacks is to make Plaintiff unemployable. The information posted is meant to inflame and combines truthful statement with attacks which are awful.

20. The posts are injuring Plaintiff's professional reputation and business. Plaintiff seeks no adjudication as to who is making these posts only that the accounts were compromised or not hers. .

21. Plaintiff seeks an adjudication with X Corp's consent that pursuant to the subscription agreement that the accounts/posts are not hers or are tainted/adulterated and therefore not admissible for the reasons set forth herein.

22. No other person or entity is in privity of contract with the subscription agreement except Plaintiff and X Corp.

23. Plaintiff asserts that at all times Defendant X Corp *has been exemplary in their assistance to Plaintiff and in their response to Plaintiff.*

24. Declaratory Judgment is being sought so that Plaintiff and X Corp do not have to expend further time, money or resources on inquiries about these accounts and/or these posts.

25. *No monetary request is being made from Defendant X Corp and none will be sought.*

26. A Declaratory Judgement is an adjudication of the rights and liabilities of the parties.

27. By entering Declaratory Judgment, both Plaintiff and X Corp will terminate the harassment by third parties about these posts. Plaintiff is not even sure the alleged posts were ever on the platform as she was never able to find them.

28. Plaintiff has already spent more several years and five million dollars defending against inquiries about these malicious accounts. She has over a quarter of a million dollars in medical bills caused by the stress of these attacks.

29. Moreover and most importantly, these attacks and posts are diminishing confidence the public has in our judiciary. As an officer of the court, plaintiff has a duty to adjudicate this matter so that it terminates any consideration that anyone in the court system believes this nonsense.

30. By way of example one post talks about plaintiff swimming in a pool with an 80 year old female justice and then verbally attacking her. While counsel has attended state bar functions, the attire was never a swimming suit. Plaintiff has a three foot scar down her back from spinal surgery, she was a paraplegic. Plaintiff was GC of a religious hospital. She did not parade around any bar meeting in a swimming suit in front of her peers and the judges before whom she practiced. The post was clearly intended to diminish the status of two women in the profession. To be blunt, the post reads like a description of a low budget blue movie scene. The concept is horrifying to the plaintiff.

31. Plaintiff by obtaining this judgment believes it will terminate further inquiry and prevent further injury to her person & property and to that of X Corp.

32. Starting in 2018 to the present, Plaintiff has been plagued by an individual(s) or entity who opens X social media accounts in Plaintiffs name and then make outrageous posts. This is always followed by a report to the Bar.

33. Plaintiff and her law partner have been forced to respond to over Thirty (30) false and baseless bar complaints, all based upon social media accounts and posts which are not hers.

34. The cost of defending these complaints to Plaintiff and her firm exceeds more than $5 million dollars.

35. Plaintiff requires this Declaratory Judgment to address the repeated false reports about invented accounts and posts.

36. Therefore, Plaintiff seeks declaration the accounts listed below are not her accounts and/or the posts are not her posts and/or by law they are tainted by third parties.

## COUNT I

37. Beginning in 2022, Plaintiff's accounts were subject to repeated attacks in violation of federal law as set forth in The Computer Fraud Act as set forth in Title 18 U.S. Code §1030.

38. In violation of the Act, their parties placed posts on her account, altered posts on the account, until finally the account was closed due to the problems.

39. On June 24, 2023 Plaintiff purchased a Blue Check Mark at the behest of the engineers. Ms. Lowery literally would deactivate the account for period and then open the account with X Engineers to try to find out who was doing this.

40. A copy of the X receipt showing when the Blue Check mark was purchased is attached as Exhibit A.

41. Then Ms. Lowery receives Twitter posts claiming to be hers from January of 2023 which have a blue check mark. And posts which anyone with a brain could tell are not Plaintiff's based upon the syntax and grammar used. To be blunt, many of the posts had a "uneducated syntax and grammar."

42. Next, Ms. Lowery's X Corp handle on posts on the controversial tweets kept changing. Accordingly she was posting on accounts from @margaretjlowery; @MargaretJLowery;

@thelowerylawfirm; @thelowerylawfirm, everyday a new account would appear to post outrageous attacks on her colleagues. This was done to isolate and make Plaintiff an outcast.

43. Any post prior to June 24, 2023 which contains a blue check mark is not from Plaintiff's account.

44. Plaintiff did not purchase a blue check mark until June 24, 2023 because X thought it might help identify the hacker/attacker.

45. Next, Ms. Lowery's actual X Account was inactive most of 2023 due to hacks. The only time she opened it was to put posts on the account to locate the hacker. Even during the time period her account was "inactive" she was sent posts on the account.

46. Under the Federal Communications Act 47 U.S.C. §151 et seq. & The Computer Fraud Act, 18 U.S. Code §1030, no party may establish the accuracy of account ownership by testifying they "saw it on the Internet."

47. As X Corp will explain to the Court, repeated unauthorized access to any account, in violation of the X Subscription agreement, makes authenticating the account or posts impossible. No one can certify the tweets from a compromised account on X account as valid admissible evidence under the federal rules.

42. Tainted Tweets are not evidence to be used against the victim of the hack, they are evidence to be used against the criminal enterprise who engaged in act of computer hacking.

43. Plaintiff's account was closed in August of 2023 due to the hacks, add ons and other manipulations because they were damaging the X Platform.

38. Under federal law, a social media account that has been hacked, altered, manipulated and violated cannot meet the legal definition of admissible evidence under the federal evidentiary rules because of the requirements of foundation under the Federal Communications Act.

39. Therefore Plaintiff seeks a declaration by Judgement that any post on any account with the call handle:

   a. @margaretjlowery;

   b. @MargaretJLowery

   c. @TheLoweryLawFirm;

   d. @TheLoweryLawFirn

   before the date of this Court's judgment are from tampered/tainted accounts upon which no post can be validated or authenticated.

40. Per the Federal Communications Act Title 47 U.S.C. 151 and its subsequent modifications, and the Computer Fraud Act, 18 U.S. Code §1030, plaintiff seeks declaratory judgment the following account/posts are not from her X account: Tweets identified as being from @margaretjlowery:

   a. "The Illinois Supreme Court apparently endorses, permits, encourages and sanctions the harassment of women and minorities in the Illinois Bar to the point they must flee the jurisdiction."

   b  "[T]he Illinois Supreme Court has a hit list of attorneys they want to target because they are outspoken whistle blowers[.]"

   c. "[Former Chief Justice Ann Burke] HATES JEWS. While smiling to me and nodding, behind those kind eyes lied [sic] Judge Andrew Gleeson's DIVORCE and

-8-

in return gets appointed to a new judgeship? I wonder what the paid rate of exchange was for services rendered in that divorce. All above board I'm sure.

None of the posts are accurate posts as a matter of federal law and cannot be authenticated as true, accurate or correct due the account hack. Since a third party had access to the account, no one can certify the posts as accurate.

41. Plaintiff also seeks to declare that any account of post from @lowerylaw @thelowerylawfirm, @thelowerylawfirn, @TheLowryLawFirm; @LoweryLawFirm @TheLoweryLawFirm, none of those accounts are Plaintiff's accounts. Therefore none of the posts are from Plaintiff's registered account at any time before Judgement is rendered.

42. Plaintiff further seeks to declare the follow posts are not her posts.

   a.   November 13, 2023   Margaret J. Lowery @lowerylawfirm [X]

   "Today I found out that a person I had admired, profoundly broke my heart and that person was Chief Justice Anne Burke. I attend bar meetings and we swam in the pool together talking at bar meetings on the difficulties of women in the bar and the UMPH it took to succeed. (Emphasis in original.) I then found out today, that she lied to my face about her kindness. She HATES JEWS. While smiling to me and nodding, behind those kind eyes lied [sic] seething JEW HATE. Then she smirked and laid her plan to destroy my career. (Emphasis in original) I am a practicing attorney in the State of Illinois and it is the MOST CORRUPT system and the most TOXIC SYSTEM in the USA. I would rather pour gasoline over my body than ever step foot in that FUCKING HELLHOLE. So why don't I just leave THE BAR, they won't FUCKING LET ME!"

   b.   November 9, 2023 Margaret J. Lowery @lowerylawfirm [X]

   "ONLY in ILLINOIS do you see a retired CHIEF JUSTICE OF THE COURT walking into the courthouse with her DEFENDANT attorney husband for his CORRUPTION trial. Same person who spewed JEW HATE all over the FBI tape airwaves. This is HOW the State of Illinois demonstrates FAIRNESS!" (Emphasis in original)

   c.   November 13, 2023 Margaret J. Lowery @lowerylawfirm [X]

"Every single day I am going to ask the tough questions. Why? Because women and minority attorneys deserve better treatment than they are receiving from this entity IMHO. The Illinois Supreme Court espouses that it does NOT tolerate workplace abuse, such as bullying, retaliation and discrimination, so when will the justices produce a complete list of all the whistleblowers they have hired to demonstrate this statement?"

d.  August 11, 2023 - Margaret J. Lowery @MargaretJLowery [X]

"Wow the Illinois Supreme Court has a hit list of attorneys they want to target because they are outspoken whistleblowers? They target their political opponents? Is this true? ..."

e.  January 17, 2023 Margaret J. Lowery of The Lowery Law Firm @MargaretjLowery [X]

"Effective today, the ILLINOIS SUPREME COURT ruled no attorney in the State of Illinois has ANY FIRST AMENDMENT RIGHTS. If an attorney expresses ANY opinion about a judge, it will subject the attorney to immediate discipline." (Emphasis in original.)

f.  July 19, 2023 - Margaret J. Lowery of The Lowery Law Firm @MargaretJLowery [X]

"Isn't it ironic that the new SCC [St. Clair County] associate judge signed off on the majority of Chief Judge Andrew Gleeson's DIVORCE and in return gets appointed to a new judgeship? I wonder what the paid rate of exchange was for services rendered in that divorce. All above board I'm sure." (Emphasis in original.)

## FIRST CAUSE OF ACTION

**(Declaratory Relief & Permanent Injunction)**

43. Plaintiff realleges and incorporates herein by reference Paragraphs 1 through 43 above.

43. Since 2018, Plaintiff has been forced to repeatedly defend against malicious complaints that social media accounts are hers. As this Court is fully aware, anyone can open an account in anyone's name and start posting. The name which publicly appear on an account may or may not be attributed to the individual operating the account.

44. Many accounts exist on X of Elon Musk, Joe Biden, Kamala Harris and Donald Trump and often they are opened to be mischievous. Normal people realize it is a stupid prank.

45. However, when it involves a lawyer and the profession, the prank is no longer funny. It is a complete waste of attorney time, court resources and it drains time away from important work. For instance, Plaintiff had been working on the Phase I Clinical Trial for the Cure for Schizophrenia. European studies have a permanent cure rate of 70%. The cure for schizophrenia would clear out our prisons and hospitals and save our country hundreds of millions of dollars in health care costs.

46. Instead of being able to work on a cure for schizophrenia which would save the US health system trillions of dollars, it would benefit our court system by eliminating many of the pro se prisoner complaints because these individuals would never encounter they stystem.

47. Instead of working on a cure for schizophrenia, Plaintiff is wasting her time defending "fake tweets and accounts." This court should understand how destructive such conduct is to our court system.

47. Pursuant to the Federal Communications Act no person may claim nor adjudicate that any third party platform social media account or post was made by an individual without primary source verification. That is federal law. Third parties must verify the post/account were

-11-

opened & operated by the individual directly from the individual or they must contact the platform.

48. No person may adjudicate social media account ownership or attribute a post to an individual or X Corp., unless the account and post have primary source authentication by the platform or the individual account owner.

49. No inferior court may adjudicate any account and attribute it to Plaintiff when the procedure violates federal law. No one can establish account ownership or authenticity of a post by saying "I saw it on social media." That type of authentication procedure directly violates due process, federal law and it is prohibited.

50. The X account identified at @ margaretjlowery, @MargaretJLowery was hacked. No post on that account can be authenticated as accurate

## COUNT II

51. The account opened on November 1, 2023 with the handle @thelowerylawfirm, @lowerylawfirm @thelowerylawfirn @TheLoweryLawFirm was not Plaintiff Lowery's X account.

52. None of those posts attributed to those account are Plaintiff's.

53. Plaintiff further seeks disclosure of all inquiries to those accounts, if any, and as permitted by federal law.

## COUNT III

54. Plaintiff seeks a permanent injunction that no third party may make further claims these accounts or posts are Plaintiffs.

55. Absent written confirmation from X and/or Plaintiff that an account or post was Plaintiff's, the plaintiff as a matter of law shall no longer be required to respond to any further inquiries third party inquiries about these posts or accounts at X.

56. Plaintiff further states that no party may collaterally attack this judgment because no party was privity in contract with X Corp.

57. Plaintiff further seeks disclosure of all inquiries to those accounts, if any, and as permitted by federal law.

58. The U.S. District Court of West Texas retains exclusive jurisdiction regarding all issues associated with this Judgment.

59. To the extent that X Corp., or any federal court refers this to DOJ or FBI for prosecution, Plaintiff will fully cooperate.

WHEREFORE, Plaintiff prays for the Order be entered in substantial compliance with the attached order and *Plaintiff will assume the costs of this action &* for such other relief as is just and appropriate under the circumstance.

Respectfully submitted,

*Margaret J. Lowery*

Margaret J. Lowery, Pro Se
5013 S. Louise Ave, PMB 4014
Sioux Falls, SD 57108
(918) 513-2204
margaretl@lowerywilkinsonlowery.com
(Licensed to practice law in Oklahoma only &
 only admitted to the U.S. District Court for the Northern
District of Oklahoma)

## VERIFICATION

On information and belief, and after a reasonable inquiry pursuant to Rule 11 of the FRCP, plaintiff states the foregoing petition is true and accurate as of the time of filing.

_____
MARGARET J. .LOWERY

Before me on this 10th day of October, 2024, appeared, Margaret J. Lowery, known by me to the same person and affixed her signature as her free and voluntary act.

S E A L

_____
NOTARY PUBLIC

NYESHI MOORE-MERCADO
Notary Public, State of Oklahoma
Commission # 22002651
My Commission Expires 02-24-2026